UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLE BEZNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-3060-B |
| | § | |
| JEREMY POEHLER, NATIONAL | § | |
| DEBT HOLDINGS LLC, and | § | |
| ELMVIEW MANAGEMENT | § | |
| SERVICES INC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jermey Poehler's Motion to Dismiss for Lack of Personal

Jurisdiction (Doc. 4). For the following reasons, the Court **GRANTS** this Motion.

## I.

## BACKGROUND

Plaintiff Cole Bezner brings suit against Defendant Jeremy Poehler and two alleged debt-

collection agencies for violations of the Fair Debt Collection Practices Act (FDCPA) and the Texas

Finance Code. Doc. 1, Compl., ¶¶ 3, 13, 20, 26. Plaintiff alleges that Poehler is a debt collector, and

liable under both statutes, as well as under the common law cause of action of intrusion upon

seclusion. *Id.* ¶¶ 26, 96–105. According to Plaintiff, Poehler resides in New York, actively manages

one of the collection agencies—Defendant National Debt Holdings LLC (NDH)—and is its sole

director. *Id.* ¶¶ 21–26. Furthermore, Poehler is alleged to have had wide-ranging control over the

collection procedures actually used by the collection agencies and their employees. *Id.* ¶ 55.

Poehler argues that Plaintiff fails to meet its burden to show that this Court has personal jurisdiction over him. *See* Doc. 4, Mot. to Dismiss. As all responsive briefing has been received, the Court now addresses that issue.

## II.

## LEGAL STANDARD

A plaintiff bears the burden of establishing a trial court's personal jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A plaintiff need only establish a prima facie case of jurisdiction; proof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). To satisfy that burden, the plaintiff must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion to dismiss without an evidentiary hearing. *Cunningham v. CBC Conglomerate, LLC*, 2019 WL 452749, at __ (E.D. Tex. Feb. 5, 2019) (quoting *Apline View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

"When considering the motion to dismiss, 'allegations in a plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.'" *Id.* (alterations incorporated) (quoting *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982))); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). "Further, '[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists.'" *Id.* (quoting *Quintana*, 259 F. Supp. 2d at 557 (citing *Jones*, 954 F.2d at 1067).

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident defendant must be amenable to service of process under the Texas long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones*, 954 F.2d at 1067. Because the Texas long-arm statute has been held to extend to the limits of the Due Process Clause, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067–68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).

To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id*. at 1068.

The "minimum contacts" prong of the due process analysis can be met through contacts that give rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific jurisdiction exists "only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Gundle*, 85 F.3d at 205.

Once the plaintiff satisfies the minimum-contacts test, the burden shifts to the defendant to demonstrate that the forum court's exercise of jurisdiction over the defendant would be unfair. *Nuovo Pignone, SpA, v. Storman Asia M/V*, 310 F.3d 374, 382 (5th Cir. 2002) (*abrogated on other*

*grounds by Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017)). "In conducting the fairness inquiry, [courts] examine (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

## III.

## ANALYSIS

A.      *General jurisdiction*

Plaintiff has not met his burden to show this Court has general jurisdiction over Poehler. "General jurisdiction exists only when the defendant's contacts with the forum state are so continuous and systematic as to render them essentially at home in the forum State." *Cunningham*, 2019 WL 452749, at __ (internal quotations omitted). More specifically,

> [s]ubstantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.

*Id.* (internal citations omitted) (alterations incorporated).

Here, Poehler is domiciled in New York. Plaintiff's Response to the Motion to Dismiss does not distinguish between the grounds for specific and general jurisdiction. *See generally* Doc. 10, Pl.'s Resp., 3–7. In his affidavit, Poehler makes clear that he does not "regularly visit Texas or spend any extended periods of time inside Texas." Doc. 4-1, Poehler's Aff., ¶ 1. Plaintiff does not allege that Poehler has any other substantial, continuous, and systematic contact with Texas. Thus, based on a review of the complaint and motion briefing, the Court concludes that Plaintiff has not met his

burden to show that Poehler has had the continuous and systematic contacts with Texas required for general personal jurisdiction.

B.      *Specific jurisdiction*

For specific jurisdiction, the cause of action must grow out of or relate to contacts between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). There are three elements courts consider:

> For the Court to exercise specific jurisdiction, the Court must determine: (1) whether the defendant has purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Cunningham*, 2019 WL 452749, at __ (cleaned up). "Defendants who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Id.* (cleaned up). But, "[e]stablishing a defendant's minimum contacts with the forum state requires contacts that are more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* (cleaned up).

Here, Plaintiff has not submitted an affidavit in response to Poehler's motion, so the Court takes Plaintiff's allegations as true except where contradicted by Poehler's affidavit. *See id.* In Poehler's affidavit, he admits he is an officer of National Debt Holdings, LLC but states:

> At no point have I contacted [Plaintiff] Cole Bezner regarding any of the issues raised in his lawsuit against me. Other than in my capacity as an officer of National Debt Holdings, LLC, I have not been involved in any specific way with the alleged debt or the alleged actions forming the basis of Mr. Bezner's allegations set forth in his complaint. I do not manage any specific debt collection efforts by National Debt Holding LLC, and I do not direct any specific debt conduct or collection efforts with respect to any debt owned, managed, or overseen by National Debt Holdings, LLC.

Doc. 4-1, Poehler's Aff., ¶ 2. He states prior to this suit he was unaware of "the specific debt and issues raised in the complaint. [He] was unaware of Mr. Benzer, Mr. Benzer's residence in Texas, or of any efforts made by National Debt Holdings, LLC to collect the debt at issue. [He] did not personally direct any of the conduct at issue in the lawsuit." *Id.* ¶ 3.

> In addition, he denies committing any specific debt-collection act inside Texas:

> I have not in any way attempted to, or actually committed, any action inside Texas with respect to the collection of the debt at issue in this lawsuit or any other debt. I did not send any letters to any individuals in Texas regarding the debt at issue, I have not made any phone calls to anyone in Texas for the purposes of collecting the debt at issue or any other debt, and I have not personally appeared in Texas for the purpose of collecting this or other debt.

*Id.* ¶ 4. Comparing Poehler's affidavit to the complaint, it does not appear that Poehler was personally involved with Plaintiff's debt-collection case prior to this lawsuit, nor with any other specific Texas resident.

There is one potentially relevant section of the complaint that Poehler does not contradict, however. He does not contradict Plaintiff's allegation that Poehler "created the collection policies" used by the collection agencies, "oversaw the application of the collection policies and procedures," "drafted, created, approved and ratified the tactics and scripts used," and "ratified the unlawful debt collection practices and procedures." Doc. 1, Compl., ¶ 55. Plaintiff cites a number of cases for the proposition that "the actions of a debt collection company are attributable to the owner, individually, when the owner 'approved, adopted or ratified the collection activity at issue,'" but only one has been relied on in this Circuit. *See* Doc. 10, Pl.'s Resp., 6 (citing *Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999); *Egli v. Bass*, 1998 WL 560270, at *3 (N.D. Ill. Aug. 26, 1998); *Pope v. Vogel*, 1998 WL 111576, at *4 (N.D. Ill. Mar. 5, 1998)). As for the one case that both Plaintiff and this Circuit cites—*Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320 (D. Utah 1997)—that court never addressed

the issue of personal jurisdiction.

Specifically, in *Ditty*, a Utah-based law firm was sued for its debt-collection practices on checks written by Utah residents. *Id.* at 1325. While the court did hold that an attorney may be personally liable under the FDCPA when he was the law firm's sole attorney, authored collection letters, trained collection agents, developed the collection practices, and determined the settlement amounts offered, an analysis of an attorney's potential status as a debt collector under the FDCPA is separate from an analysis of personal jurisdiction. *See id.* at 1325 & 1336–37.

For example, the only case in the Fifth Circuit citing *Ditty* and also discussing personal jurisdiction cited *Ditty* only in its consideration of whether the individual defendant-employees were debt collectors. *Bray v. Cadle Co.*, 2010 WL 4053794, at *7 (S.D. Tex. Oct. 14, 2010). The court then separately considered whether the employees had purposefully availed themselves of the Texas forum. *Id.* at *11–12. The court found that specific personal jurisdiction existed over these two employees—the agency's CEO and the account officer assigned to the plaintiff's account. *Id.* at *12. The plaintiff had alleged several specific acts done by the two employees, only one of which was controverted by affidavit. *Id.* For example, the employees did not contradict allegations that the CEO ratified the account officer's specific actions against the plaintiff, including direct calls to the plaintiff and garnishment of his Social Security funds. *Id.* Ultimately, the court found it had personal jurisdiction over the employees, as "[t]he alleged acts were aimed at no other state but Texas, and were aimed at Plaintiff specifically." *Id.* at *13.

Here, the facts alleged against Poehler are distinguishable from the facts in *Bray*, as Plaintiff has alleged no specific actions that Poehler took toward Plaintiff in Texas or directed toward Texas. Instead, *Cunningham* is more analogous. There, the complaint failed to indicate how the individual

defendants took specific action directed toward the forum state, and the Court held that simply "directing or controlling employees and the execution of contracts between and amongst the corporations" was insufficient to establish personal jurisdiction as well. *Cunningham*, 2019 WL 452749, at __. In addition, it is well understood that "[a]n individual's status as an officer, director, or majority shareholder of a corporation alone is insufficient to support the exercise of personal jurisdiction." *Id.* To the extent Plaintiff has attempted to raise such an alter ego theory in its responsive briefing, he has not done so in the complaint, nor requested leave to amend his complaint to allege facts that would support such a theory.  Doc. 10, Pl.'s Resp., 6; *See generally* Doc. 1, Compl. And it is Plaintiff's burden to show an alter ego relationship. *See BMC Software Belguim, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002) (considering personal jurisdiction over a subsidiary based on its parent corporation).

Thus, the Court finds that Plaintiff has failed to allege sufficient facts to show Poehler has minimum contacts with Texas. And, as "the court finds minimum contacts lacking, it need not consider whether the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice." *See Davis v. Leavitt*, 2013 WL 1155375, at *3 n.1 (N.D. Tex. Mar. 19, 2013). In short, the Court has neither specific nor general personal jurisdiction over Poehler.

## IV.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant Poehler's Motion to Dismiss (Doc. 4). The Clerk is hereby directed to terminate Defendant Jeremy Poehler as a party to the case, as all claims against him are dismissed.

SO ORDERED.

SIGNED: April 8, 2019.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE